I want to welcome everyone to the Fourth Circuit Court of Appeals today, sitting in the historic Greenbark County Courthouse in Lewisburg. We have two very interesting cases that have been expedited and need to be resolved and we fixed these two cases to be heard in Lewisburg on fairly short notice. We appreciate everyone, particularly counsel, being able to be here. As a point of personal privilege, I want to mention that this is a very special occasion for me personally, in that I'm a native of Greenbark County, formerly practiced law here, as did my brother Eddie for many years, and in particular that I was admitted to the practice of law in this very long time ago when I was admitted to practice law. You had been admitted first in the county of your residence and I had to be approved by a character committee here and admitted to practice and it was admitted before Judge Nicol Cramer, whose portrait is on the to our left in the corner, gave me and my friend Bill Goodwin, who was admitted with me, a very stern lecture on the obligations of lawyers and 45 years later I'm back here presiding with my friend Judge Albert Diaz of North Carolina and Henry Floyd of South Carolina. It's good to have all of you here. We appreciate it. The first case is Miller versus the United States Ms. Hester. Pleased to hear from you. May it please the court. Ann Hester representing Gordon Lee Miller This is Ross Richardson from my office at the table. The district court abused its discretion by overriding the government's decision to waive all of its defenses and join an innocent defendant's request to have his conviction vacated. Teague's non-retroactivity principle is not jurisdictional, which means that the government may waive it by making a deliberate choice to forego asserting it. The government intentionally relinquished any retroactivity defense here, a potential defense of which it was well aware when it filed a response supporting Miller's motion to vacate. Day versus McDonough and Wood versus Milliard make it clear that the district court has no authority to resurrect a defense based on a threshold habeas constraint including non-retroactivity, which the government has intentionally waived. Amicus suggests that the parties are attempting to have this court ignore the law by asserting that the government's waivers are binding on the courts. This argument Well the government can't come in here and agree to what the law is. They can't make law for us. No, but there's a difference between stipulating to what the law is and waiving an affirmative defense. And waiving an affirmative defense here. It seems to me that both the government and you have thrown the judge under the bus in that you want this panel to declare Simmons retroactive in a collateral attack. Is that a correct statement of the two sides? I disagree with throwing the judge under the bus and I disagree with the judge's conclusion that Powell controls the outcome in this case. Let me start by saying if the district court did properly reach the question of Simmons retroactivity, it was wrong when it concluded that Simmons does not apply retroactively. To start with, Teague does not apply to Simmons for two reasons. First of all, Simmons is substantive and not procedural. The court must ask itself this question. When Simmons makes Miller and at least 100 other defendants that we know of innocent of criminal conduct, how is it possible that Simmons is a procedural rule? There is no precedent to support such a conclusion. Well, I guess it's procedural in the sense that any rule of law that defines the method by which, in this case, a felon is going to be identified as procedural. Isn't that what Powell said? This is just a method for identifying that category of offender that falls within the reach of the statute. Why isn't that a procedural rule? Powell said that Carachuri was procedural because it limited the court's inquiry to the judgment of conviction. But a substantive rule, the Supreme Court has made clear that if a rule has the effect of leaving someone convicted for conduct that the law does not make criminal, and in this case, for Miller, that conduct is possessing a firearm after being convicted of an offense punishable by less than one year rather than more than one year, that plainly narrows the scope of Section 922 G1. And under Shiro versus Summerlin, that is the hallmark of a substantive decision. Now, Powell does not... Are you arguing that Powell was wrongly decided? Do we need to reach that question? I don't think you need to reach that question, and let me explain why. We're bound by Powell if it controls. I understand that, yes. Powell doesn't... We had a dissent there, but that's by the boards now. There's a dissent in Powell, but there is a majority opinion of the panel that controls us if Powell has anything to do with this. Well, allow me to outline for the court why Powell doesn't control here. What you have here is a... You say Simmons renders what your man did no longer a felony. No longer a criminal offense. No longer a criminal offense. Well, the underlying offense is no longer a felony, the North Carolina offense, which means that he did not commit an offense against the United States, which means that he's actually innocent of an offense against the United States, correct? Correct. And in that event, he's ought to be entitled to habeas relief. That's what you say. And how many people you think... You mentioned 100. How many folks are out there who would be impacted by that decision if you can obtain it here? Well, beyond the 922G cases, I don't have the numbers for those, but we are aware of at least 100 people who were incarcerated at the time Simmons came down. Now, I don't know about people who were... Is that just North Carolina cases? Correct. But there could be cases outside North Carolina could be impacted as well, correct? They could be using the North Carolina statute as the underlying offense. But it's only the cases that are in North Carolina that I'm aware of the numbers. We know of a class of at least 100 people. And you've got judges down in North Carolina who have gone in different directions. Correct. District judges in eastern North Carolina have gone, what, the way you want to go. Correct. The district judges in the middle district of North Carolina have gone your way. Correct. And the district judges in the western district of North Carolina have split. Correct. Some have gone one way and some have gone the other. Correct. So some people have obtained relief. Correct. And presumably are out of prison or their supervised relief's been eliminated. Yes. Or discharged or whatever you call it. But your man's one of those that didn't get any relief. The approximately 25 people that we are aware of who are innocent under Simmons who still remain incarcerated. And the question is whether Simmons is retroactive to provide them relief as well. So you're here for Mr. Miller, but you're really here for everybody. That's true. And the government agrees with you. This is also true. Which is a strange situation. Never happened before. I've never seen Ms. Ray be in court and agree with the other side before. She's here a lot. But never agreed with the other side. So let me explain. And that begs the question of whether or not we actually have a controversy in this case. Do we? Well there is a controversy because the district court disagreed with us. So now there's a controversy. But let me explain how Powell does not control the outcome of this case. The only way to reconcile Powell with Supreme Court precedent on the retroactivity of substantive decisions is to conclude that Simmons holding extends beyond Karachuri. And this conclusion is correct for a number of reasons. First of all, Karachuri was not even a criminal case. It interpreted an immigration statute and the criminal statutes that it referred to are not the statutes that were issued in Simmons. But second, the panel opinion in Simmons shows that the effect of Karachuri on cases like Simmons was not at all clear until the court issued its en banc opinion. And even then, the court was starkly divided about the effect of Karachuri on prior North Carolina convictions. Simmons holding went well beyond Karachuri. For starters, the result in Simmons was impossible without its conclusion that when used as a predicate for felony sentencing purposes, North Carolina's sentencing statute creates separate offenses that in turn yield separate punishments. This conclusion was based on Rodriguez v. United States and it was completely unaddressed in Karachuri. Second of all, Karachuri and Simmons interpreted different federal statutory terms. As the Simmons dissent pointed out, Karachuri did not focus on the term punishable, but it instead focused on the term conviction. And this led to a disagreement in Simmons about the meaning of the phrase offense that is punishable in Section 802-44 and whether that term had to take into consideration the particular defendant in question, an issue again that was not addressed in Karachuri. And again, this conclusion was not just based on Karachuri. Simmons also relied on Rodriguez in reaching that result. Does it make any difference to you, to your case, that your client is now in the position of his first bite for 2255 relief? Not a direct appeal, but it's his first time. Well, the fact that it's his first bite at the apple means that the court can consider this case under 2255 and doesn't have to go to where the court went and writes the decision that the court asked for supplemental briefing on. I mean, there, the defendant was having his second bite and 2241 wasn't available to him, and so the government helped him get relief through a Rule 48 motion to dismiss. But that whole process isn't necessary here because the court has jurisdiction under 2255 to address this issue. But now, Mr. Dietz, representing the ruling of the court, says that we don't really have any jurisdiction here because the COA wasn't properly issued. No authority for it. How do you get around that? First of all, merits-wise, that's just incorrect. The certificate was properly issued because Miller's claims raise a debatable constitutional claim. He doesn't have to show that a single judge ultimately would agree with him on the outcome of those claims. And he ultimately meets that low burden by arguing that his due process rights were violated in two respects. First of all, because he was convicted based on conduct that is not criminal. The Supreme Court has held that that is a due process violation. But second of all, because the district court deprived him of any remedy. And that, again, is another due process violation under Hicks v. Oklahoma. But the district court never used the magic words, due process, did it? I mean, it just simply, it implied that, but doesn't the statute require an explicit delineation of a constitutional violation? In this case, because the district court decided it based on retroactivity and the two issues are inextricably intertwined, it's not necessary that the court come right out and say that it's based on this constitutional issue. But even if the certificate were not properly issued, the underlying requirements aren't jurisdictional. Again, like the Teague defense, they can be and have been waived by the government in this case. The amicus can't challenge the certificate. Well, the government can't agree to the COA again. I mean, they agree to the statute of limitations issue, but they can't come in agreement with the COA. You need a judge or justice of the United States to issue a COA. That's what the law says. Now, Judge Conrad issued one. So it's there. Correct. And the Supreme Court has said in Gonzalez v. Thaler that once the certificate is issued, that is the only aspect of that statutory requirement that is jurisdictional. The other two underlying requirements that there be a constitutional claim and that the certificates state what that is, neither one of those are jurisdictional. And those are issues that the government can waive. But in any event, it hasn't asserted it here and amicus is not a party who can assert it. Well, he's supposed to be supporting the judge. The amicus is supposed to be supporting the judge who issued the COA. Exactly. So he's not supporting the judge if he says the judge was wrong. Is he? In my opinion, no. I thought that's what you'd say right off. So, Ms. Powell. That was part of the argument. Judge Niemeyer and Powell clearly indicated the caricature presendo was a procedural rule. You can see that. He seemed to suggest, if not outright hold, in the last few paragraphs of the opinion, that Simmons should also be viewed in that light. It wasn't necessary to the holding in that case, but he seems to suggest as much, which is why that vigorous dissent by a judge who shall be unnamed but appears on the bench right next to me was as vigorous as it was because it seemed to suggest that the scope of Powell went beyond caricature and might implicate the ability of defendants such as your client to get relief in subsequent cases. So why doesn't Powell control? I'm not sure I agree with the court that that's what the majority said because the majority never talked about whether Powell was retroactive or not. In fact, it pointed out the government's position in Powell. The government had specifically stated in that case that Simmons was retroactive. And the majority pointed that out and then made no ruling on whether Simmons was retroactive or not. And I suggested to the court that if there is any unspoken implication to that effect, it doesn't have it's not a holding. It would only be dicta. But I'm not even sure that it says exactly that. I mean, what Powell said is the sole innovation of caricature was to limit inquiry to the defendant's record of conviction itself. And then it explained that Simmons extracted Carichuri's interpretive principles and then applied them in a new context, which seems to me to suggest that the majority is almost acknowledging that Simmons, in fact, went beyond what Carichuri had done. Then it says, in doing so, we held that because no findings of recidivism or aggravation appeared in Simmons's state record of conviction, these enhancements could not be considered in determining whether the offense constituted a felony drug offense under the CSA. That suggests that this is a procedural matter. But that is only part of what Simmons held. I mean, for sure, Simmons adopted the Carichuri limitation that you need to look at the judgment of conviction. But Simmons did more than that by interpreting the North Carolina sentencing scheme, the sentencing statute, and also by interpreting that phrase that doesn't appear anywhere in Carichuri of an offense punishable by a term exceeding one year. I'm not sure exactly how it's interpreted, but offense punishable by was not a phrase that was interpreted in Carichuri. And the amici says that in determining whether or not an offense is punishable by a term of more than one year, it's simply denoting a process, a procedure by which you determine that. Beyond looking at the record of conviction, you now go beyond that record to look at other information to make that determination, but it remains nonetheless a procedural rule. Is that right? That is the argument that he's making. But I submit to the court that that really it's not seeing the forest for the trees. Because if you look at what has happened to Miller and to other defendants in his position, in fact, they've been convicted of conduct that is no longer criminal, and that is what a substantive ruling does. I see that I've run out of time. Thank you. You saved some time. The government's going to help you anyway. You get to open and close, and that's right, now you get another argument on that by the government. Ms. Ray? Thank you, Your Honor. Amy Ray for the United States. This court's decision in Simmons narrowed the substantive scope of a criminal statute such that conduct that we understood to be unlawful when Mr. Simmons received his enhancement, we now understand under Simmons is entirely lawful. So an individual like Mr. Miller who could possess a firearm for purposes of federal law at the time he was convicted was convicted of an offense instead. In that substantive narrowing of the statute, the decision is substantive, and the Teague general rule against retroactivity does not apply because it falls neatly into the exception to Teague for substantive decisions of criminal law. Would that same result apply if we were dealing simply with a sentencing enhancement? Yes, absolutely, Judge Diaz. The question that Teague raises is what is the rule? Is the rule itself retroactive or is it not? So if it is retroactive as to some purposes for post-conviction, the question is does it apply retroactively at all? So it would apply. But let me be clear, the question of retroactivity and cognizability are distinct, those two questions. We first under Teague have to reach the threshold question of retroactivity and that's what this case brings into play. The second issue is cognizability, and so whether a particular petitioner's claim of sentencing error is cognizable under whatever post-conviction statute is raised is a separate issue that's not before the court today. The government has argued in the district court that quite a few of the defendants who have sentencing errors under Simmons should be entitled to relief, and we have agreed to that relief in armed career criminal cases and similar cases. Do you agree with the numbers that we got? Oh yeah, at least. Judge King, yes. I mean I think that they're greater than that. Now the 922G I would defer to Ms. Hester because I think she's actually looked at that very carefully, but I think when the question of how many defendants might benefit from Simmons or otherwise would not if it were not held retroactive is in much more than 100 because that's hundreds at least, if not a thousand of sentencing claims. Ms. Hester argues that in addition to winning on the merits of Teague, we don't even need to get to Teague because what we're dealing with is a non-constitutional interpretation of a statute. Is the government willing to go that far? We do not we have not taken a position, we have not waived the Teague defense in this case, so we don't agree with the defendant in this case that we have affirmatively waived that defense, and the reason we didn't waive it is because it doesn't apply. You don't waive a defense that does not apply, and this is an exception to that Teague defense. The exception is for substantive rules of criminal law, a decision that makes a change in the substantive reach of a criminal law. That decision, Simmons, is one of those decisions, so we don't need to waive it. It applies. And so we don't believe that that, I think that the waiver issue is really a non-issue in this case. We didn't purposely waive it because it doesn't apply. You were in the Simmons case, weren't you? Oh yes, sir. Yes. I was. The memory is deep. But yes, no, I was. And you know, I think that the decision in Powell for the government to determine whether or not our position was that careturi res endo was itself better understood as procedural or substantive was a very close question. But Simmons, the question of whether Simmons is retroactive or not, we do not believe is a particularly close question. And we made that, and that's not to suggest that the district court in this case was just off its rocker. I don't think that's true either. But we didn't throw the district court under the bus because we argued this point in the district court. It's not as though we came on appeal and we're arguing something else. We've been clear really since Simmons was issued that Simmons itself substantively narrows 922 G1. And you've taken that position in all the cases like this in the western district? We have. And in the eastern district and in the middle district. All over North Carolina. As far as I know, we have. We better have. Because, you know, we really worked, we spent a lot of time after Simmons obviously considering its impact. And really before the en banc decision came down we were looking at its impact. And we knew that its impact would be broad. And we wanted to be sure that once the decision was issued in Simmons that the government was ready to do justice. And justice in this case is applying that decision and the honest application of that decision is that it is a substantive decision that renders lawful conduct that we understood earlier not to be lawful. Would this be a correct statement as part of the reasoning that you've taken? The retroactivity of Simmons was irrelevant to Powell. Because Powell's 2255 position can only be triggered by a retroactive Supreme Court decision. That is accurate, Judge Boyd, yes. That's right. I mean, and that's part of our argument that Powell didn't decide this case. And it gets us away from Powell. It does. And I think that in response to Judge Diaz's questions of Ms. Hester about that language in Powell that refers to Simmons. That language certainly exists, but I don't think that we have to run from that language because I think what the court was saying in Powell, the majority, was simply saying taking a small part of Simmons and noting that the Simmons court was looking to Karachuri-Rosendo for certain procedural aspects that were in Karachuri-Rosendo itself, but that language did not decide the issue of whether Simmons itself is a substantive decision. And the court couldn't have decided that issue in that case. It was a timeliness issue. It was a statute of limitations issue. And it resolved only the claim of Troy Powell. There may have only been one other defendant who filed his petition within a year of Karachuri-Rosendo. And so going into the Powell litigation, we were aware that that question of timeliness was important to establish and that Troy Powell was one of the few. And that's not really relevant here except that the only issue in Powell was timeliness. And the government after Powell decided, the Department of Justice decided to begin waiving the statute of limitations so that that question wouldn't be an issue anyway. In cases in which we understood that the defendant was entitled to relief under Simmons and where the only issue in the way was the statute of limitations. So when Amikai says Simmons did not announce a new rule that applied the rule announced in Karachuri, that's wrong? I disagree with that statement, yes, Judge Diaz, because it did much more than that. Simmons didn't simply, so the question in Karachuri-Rosendo was what's an aggravated felony for purposes of the Immigration and Naturalization Act? And how does that interact with 844A of the Controlled Substances Act? Simmons did not construe the Controlled Substances Act for purposes at least not 844A. It didn't also consider whether or not someone had committed an aggravated felony for purposes of the INA. It was not simply taking a rule and applying it to different facts. Indeed, it was, as the court recognized in Powell, extrapolating interpretive principles. And the government's position is that, and this is what we looked at when we decided the position to take in Powell, was that we didn't have any Supreme Court case that arose in an immigration context that did not apply to a criminal case that had been held to be a substantive decision for purposes of retroactivity. Every case that we found Bailey, Santos, Skilling, Watson, all of them, arose in the context of a criminal case and that makes some sense. So what we looked at was that at a minimum a court had to take the Karachuri-Rosendo rule and apply it to a criminal case for it to be a substantive decision of criminal law. Karachuri-Rosendo itself did not do that. It answered procedural questions, but to the extent it could be considered substantive, did so only in an immigration context. So it fairly may have application, as this court held in Simmons, to a criminal case. But it was not itself a case that narrowed the scope of a substantive criminal statute. Simmons is. And it's inescapable that Simmons is because it's not simply a matter of what we look at. And in reference, Judge Diaz, to your question earlier, doesn't it sort of just change what documents we look at? No. We still look at the same criminal judgment we looked at before. The criminal judgment in North Carolina that we looked at before to determine whether someone was a Class H or I felon is the same. What we now know, though, is that just because any defendant could have received punishment of more than one year isn't enough. It narrowed  And that was a substantive narrowing. It wasn't simply looking at a different document. Actually, we look at the same document. So Powell did not decide the case, the Simmons retroactivity, perhaps because the government, well, because it just arose in a wholly different procedural posture. This case, and one of the reasons we didn't use Rule 48, and we haven't tried to we haven't looked for ways to get around the decision in this case is because we believe that this court should properly issue a published decision holding that Simmons is retroactively applicable on collateral review. It does apply. It will have application to more than simply 922G1 cases. Why couldn't we just say you have used Rule 48? You've joined in the request that the conviction be vacated. We agreed to the motion to vacate. Yes, Your Honor. The reason that this court should not So you have used 48? No, we haven't, Your Honor. We definitely have not Well, you don't have any other authority to agree to a motion to vacate except under Rule 48 or the criminal rules that I can find. Judge King, with all due respect, we simply consent and agree that the motion should be vacated. We're not invoking any rule of our own. But you're saying the motion should be, that his conviction ought to be vacated. Yes. All right. The government says that and the government under the Rice v. Rivera and under Rule 48 has the power to do that. Yes. I mean, you could do that with all these cases expressly and we wouldn't have to be here. Well, only the 922G1 cases. But here's the difference. Because you want to put us in the position of having to rule on their retroactivity issues. Is that right? Let me say this. I hesitate to say I'm putting the court in a position to rule on anything exactly. But here's the deal. Pardon my rather casual language there. 2255 is a motion that a defendant may bring. Rule 48 is a motion that the government may bring. The government by consenting to a motion under 2255 is not bringing a Rule 48 motion. It's simply consenting that the defendant's motion should be granted. In the Rice case, they didn't cite Rule 48. The government did not. Right. But the government did file a motion. They filed a motion to vacate the conviction. Right. And we did not do that. But you agreed that the conviction should be vacated. We did. You said that in your pleading and you said that in your brief. Yes. But one other thing that this court recognized in Rice is that Rule 48 is very much about the government's discretion. Otherwise, it's a very similar situation. It's a different statute and everything. But what had occurred in the Rice case was no longer an offense. That's what Mr. Rice was saying. That's right. What I did is no longer a violation of law, so I shouldn't be burdened by this conviction and be doing all this prison time. Right. But the difference is that none of the post-conviction motions that Mr. Rice could have used were adequate. They wouldn't work and that was the first part of the Rice holding. And so what this court did was look at the fact that, and I think it was critical that the government had filed a motion in that case to vacate. Well, that's what you have to say. That it was critical they filed a separate motion. And the question is whether that makes a difference. Because here you didn't file a separate motion, but you said, we agree. That's right. We agree. We agree that the conviction should be vacated. I wholeheartedly agree with that. And is that a distinction without a difference or is it a distinction with a difference? It's a distinction that makes all the difference. As this court recognized in Rice. That's what you have to say to get us to the retroactivity question. It's also the question of what I would say based on the Rice decision itself which recognizes that the government's, the whole point of Rule 48 is to give the government discretion. And that deference by the court to the executive's decision. On a separation of powers issue. That's right. And so in this case, the government has not used or exercised its discretion to file an affirmative motion on behalf of Mr. Miller. But you have exercised your discretion to join in the relief. And that's Judge King's point. The result it would appear to me to be the same. Well, Judge Diaz, I think the result might be the same. But there is no exercise of discretion in analyzing the law and deciding whether or not the defendant or the petitioner has stated a claim for relief under 2255. We have no discretion on that. If the government reviews a motion to vacate and believes that the law properly entitles the petitioner to relief, I don't have the discretion to tell the judge that that's not true. I have to, on behalf of the government, give the court, the government's understanding of the defendant's entitlement to that relief. There's no discretion there. Talk about the standing of the amicus to challenge the COA. Well, the government's position is that the amicus doesn't have standing. The only party with standing to challenge the issuance of the COA is the government. The government has not done that. And Gonzalez v. Thaler, the Supreme Court's decision makes quite clear that once that certificate is issued it has served its gatekeeping function. So for whatever purpose, if the government were going to, and the government would not, did not, again, exercise its discretion to assert that affirmative defense, the government is the party who would do that. We did not. Any challenge to that is forfeited. And Gonzalez v. Thaler is pretty clear, I think, about that point. What's the constitutional issue? The constitutional issue is one of due process. And I see that my time is up, but if I might respond very quickly. Actual innocence? It is, and it's Jackson v. Virginia, and I would note that the two cases cited by amicus in a footnote challenging that notion do not apply, and I think if the court reviews those, those are procedural decisions, not substantive claims of unerring of the statute such that the defendant's conduct was lawful. Thank you, Ms. Ray. Mr. Deets, we've talked about you a lot, now you get to speak for yourself. And Judge Conrad. Good afternoon, Your Honors. May it please the court, Richard Deets, appearing as court assigned to amicus counsel. Your Honors, I agree, and I think the district court would also agree, that under this court's en banc decision in Simmons, Gordon Miller is actually innocent. I think the challenge in this case, and the reason that I'm standing here today, is there are a number of very complicated legal barriers that appear along the path that Mr. Miller and the government have chosen to take to get Mr. Miller. And I want to start very briefly, I think the court ended with the certificate of appealability question, so I'll just address that very briefly. Candidly, I raised that issue because I think the decision of this court is going to go one of two ways, either a published precedential decision that will set possibly hundreds of criminal defendants free, or vacate their convictions, or alternatively a suggestion that this opinion be heard by the court, or this case be heard by the court en banc, and that Powell be overruled. I think either way, I thought it was important for the court to consider all the potential issues in this case now, before that opinion or that decision to go en banc. And I think the point I made about the certificate of appealability is I agree, this is not a jurisdictional question. As absurd as it sounds, the Supreme Court said in Gonzales that if Judge Conrad had wrote certificate of appealability on his order and signed it and left it blank, it would confer jurisdiction on this court. But what the Supreme Court has also said is the other requirements for a certificate of appealability are mandatory, although not jurisdictional. And I think that makes sense, because if you look at it, unlike, say, a statute of limitations, which is a personal defense for the government, like all statutes of limitations, it's something that is personal to a party and can, of course, be waived or forfeited, and the court would need to honor that decision. But the certificate of appealability requirements are really a question for the court, and in fact, as the legislative history suggests, also for crime victims because there seemed to be this just endless slate of habeas petitions and appeals, and they wanted some way to limit those. So in the AEDPA, Conrad said... Well, if they can't be waived, then it sounds like they're jurisdictional. I mean, you can't have it both ways. Well, and I'll concede that I think my point is this court is not required to dismiss the appeal, but it's also not, as Mr. Miller and the government, I think, are incorrect in suggesting that the court also can't even consider the question. I think this court can address the defect in the certificate of appealability. I think it does not need to. But I just thought it was an issue that should be presented to the court so that it could be considered. Well, I thought you were supposed to support the district judge. Yes, Your Honor. And he issued it. That's correct. Well, you have to say, don't you have to say he's right? And that's why I raised it... You're saying he's wrong to issue it. I don't think that Judge Conrad was wrong. I think that when he used that boilerplate language that this involved the denial of a constitutional right, he may have been using... Well, you say, the first thing you said is he's actually innocent. Now, when somebody's actually innocent, they're in a penitentiary or on supervised release. That's a constitutional violation. Your Honor, I've looked at the cases. I think it's a difficult question. I'll concede there are some, Ms. Jackson versus Mrs. there are some cases... Well, it's at least enough for a certificate of appealability and a substantial basis for claiming it's a violation of the constitutional right. Well, I'd refer the court... I cited some cases in my brief. Another example I think is Herrera versus Collins. There have been a number... That was actually a death row. Herrera case was an actual innocence thing, right? That's right. And in those cases, the court has suggested that actual innocence itself is not a constitutional claim. And I think if you even look at the structure of the Constitution, there are the framers created a path for people... I haven't actually spoken on it, but certificate of appealability doesn't resolve the thing. It just gives the court a right to consider it or gets it up here. That's correct, Your Honor. Well, if it's already here, there's a defect in it. I could issue a certificate of appealability today, couldn't I? I mean, this has to be one judge. Yes, Your Honor. And that's why I raised the issue only so the court can consider it. And I'll concede that the court can simply find that this issue has been waived or forfeited and can proceed to merits. As I said, I just thought it was something to be aware of. It's my role as a witness. But I'll turn to what I think is really the meat of this case, and that's the Powell decision. And in Mr. Miller and the government's arguments, I think there's one point that sort of escaped the arguments. And that is that Troy Powell and Jason Simmons were in nearly identical factual situations. And that is both Troy Powell and Jason Simmons were arrested and convicted of a federal drug trafficking offense. And both had a prior North Carolina conviction for possession with intent to distribute marijuana. And so when Troy Powell came before the court and made the argument that he should be entitled to pursue his habeas claim because caricature provides him with his legal argument and it applies retroactively, the court analyzed that issue. The court necessarily found that whatever the holding of caricature was, that it applied to Mr. Powell's situation. And I think that's an important point to consider because really if when the majority in Powell looked at the case and said, well, caricature actually is a different holding. It's not the same holding as Simmons. Then there would be no need to write an entire published opinion deciding whether caricature was retroactive. They could have wrote a one-paragraph opinion that said, thank you, Mr. Powell, but your argument here about caricature just doesn't matter. What matters is the Simmons case. And that is not a Supreme Court decision, so you lose. And I think the dissent in Powell also sort of made that point, that this was a case where caricature and Simmons, really on this issue, they are the same holding, which is that in a case like this you can't consider what a hypothetical defendant's possible punishment would be. You look to the record of conviction of the actual defendant standing before the court and you ask, could this defendant have been sentenced to more than one year in prison for this crime? And that is the holding from caricature, it's also the holding from Simmons. But wasn't it important in the Powell case that 2255 was in fact on time, whereas in this case, Miller, it's time. Isn't that a big distinction between those two? The situation in Powell was, you're right, that the Powell case was filed after, that Habee 2255 motion was filed after the one-year statute of limitations, and that's why in Powell, Troy Powell needed caricature and not Simmons, because he needed a Supreme Court decision in order to be excused from that one-year statute of limitations provision. But I think the retroactivity analysis that the court undertook in Powell is the same Teague analysis that applies here today. So the fact that Powell is in a slightly different procedural circumstance says nothing about whether or not the decision on the Teague analysis is binding and patrolling in this court today, and I think it is. And of course that is what Judge Conrad found below. I thought Judge Conrad was relying on our unpublished authorities. No, I believe it's quite clear that the district court relied on Powell. It referenced those other opinions, and I agree that I think those are relevant. He cited several unpublished cases in the Fourth Circuit as authority for what he was doing. And I cited those in my brief as well. I've acknowledged that unpublished opinions of this court are not precedential. We're not bound by any of those. We're bound by the Powell majority. We're not bound by anything that's unpublished. That's correct, Your Honor. I cited those unpublished opinions, as I explained in the amicus brief, because I think it's relevant, although they're not precedential, that 10 of the 15 judges of this court have signed on to opinions stating that because of Powell and its finding of retroactivity and the fact that it applied to Simmons, that particular habeas claims were rejected in those unpublished opinions. I mean, I think... Well, one of the reasons we make them unpublished is that we've had to decide so many cases that we don't...sometimes we don't study them as closely as we should. Well, that's right, Your Honor, but I think... Sometimes we don't have good lawyers like you all come up here to explain stuff to us. Certainly, Your Honor. I think it is. When we get this kind of situation, we really need to get it right. In this kind of case, we really need to get it right. I mean, there's a lot at stake here for a lot of people, it looks like. That's right, Your Honor. I think the response to that argument is, that's absolutely right. And typically what this court does, you only need one published opinion. And then once the law is settled, all the opinions after that can be unpublished. My argument would be, you already have the one published decision, and that's Powell. And Powell controls... But Ms. Ray says Powell doesn't control anything. The Powell majority doesn't do it for this case. That's right. I understand the government's argument. I respectfully disagree. I think if you look at Powell, if you look first at the... It looks like most all the district judges in North Carolina have also taken a different view. Yes, Your Honor, I don't think that would be the first time the district courts have disagreed with this court, though, and I think this court will follow its own precedent. You'll understand that. But how many district judges have taken the other view? Yes, Your Honor, you're right. I heard you reference earlier that I think every judge in North Carolina, except the small set of cases in the Western District... How many judges? I don't know the number of judges. You don't know how many have taken a different view? No. How many have taken the same view? We've got at least one here. Yes, I know Judge Conrad, I think there's another case adopting Judge Conrad's reasoning. I think, as I'm aware, there are a number of cases that have stayed or are being held awaiting this court's decision in this case. We have some that are awaiting it, too. Yes, Your Honor. They're already up here, yeah. Two more brief points. I wanted to address, you mentioned the Rule 48, Rule of Criminal Procedure, and the question of why not simply construe everything that's happened... What do you think of that rule? Well, I think there, again, are some challenges... It gives a lot of power to the prosecutor. It certainly does. In fact, Your Honor, I was very surprised when I read the Rice opinion. I was unaware of that power. In fact, I'm not sure what executive clemency and the presidential pardon are for if the line of agency... All they're going to do is make a motion. That's right, Your Honor, but I think that is the law in the circuit. I think the challenge for using Rule 48... Well, it's a law more than just this circuit. That's right, the court would really have to strain in this case to find, number one, that Rule 48 was raised, and of course it's more than that because the requirement that a ruling by a lower court judge be appealed in a notice of appeal is a jurisdictional requirement of this court, and I think it would be very difficult for the court, number one, to construe the government's response as a Rule 48 motion, then construe Judge Conrad's order as somehow ruling on that motion, then construe Mr. Miller's order... Well, he didn't grant a relief. He did not grant a relief. He did not vacate the conviction. So he would have denied the relief that the government asked for. The government asked for the conviction to be vacated. In those words. That's correct, Your Honor. The defendant asked for it first. The government said, they're right. It ought to be vacated. The judge denied the relief. So how can you say that he denied that he didn't rule on it? He did. He denied relief. He refused to vacate the conviction. That's fair, Your Honor. So if then the court construed that response as that motion, construed Judge Conrad's order as an order denying that motion, you'd still have to find... It's easy to construe Judge Conrad's order as denying it because he denied relief. Now the government, whether they made a motion or not, may be a little more difficult. Yes, Your Honor. I just think it would be very... They joined in the request. Yes, Your Honor. I think it's a difficult road for the court to take when this was an issue that was never raised by the government to now on appeal find for the first time not only that that issue was ruled upon, but that it was appealed and it's been properly presented in this court. And what authority would he have had to rule on that motion? Because it's a separation of powers argument, isn't it? Yes, Your Honor. I think the separation of powers question has been addressed and the argument is because the government can only make these motions when they're not in bad faith. The court has said that that preserve prevents a true separation of powers violation here, but I certainly think it's so close to the line of separation of powers in a case like this that, again, I think it's very dangerous to, when the government hasn't even made that motion to construe a response or other pleading in the lower court as having done so and then treating it that way for the first time on appeal. And finally, just very briefly on the procedural issue that Judge Diaz had mentioned, my argument is that, yes, this is a procedural, not a substantive ruling, but the Simmons ruling. And the reason very briefly is that if you examine the ultimate consequence of the Simmons decision on a 922G case like this one, what you really have is not a class of people who are now no longer, whose conduct is no longer criminalized. What you have is a situation where you have to go back and do fact finding and see, are these people actually innocent or not? Because the problem is, and I understand Mr. Miller and the government's point is, look, in most cases I think Mr. Miller's brief said almost always you can look at the papers that are filed with the judgment in the North Carolina State Court and you'll be able to see somewhere on those papers what the maximum possible sentence was that this particular defendant could have received. But even in that circumstance the government, for example, may look and say, this is a really bad guy. This is a guy who's been arrested in a bunch of other places. And I don't think there's anything in the law that suggests the government would be bound by what was in that state court clerk prepared form. And they could come before the jury and prove beyond a reasonable doubt that in fact this particular defendant could have been convicted of more than one year in prison and therefore that they satisfied the elements of 922G. And I think that really highlights that this is, in essence, an evidentiary ruling. It's a requirement about what process has to be followed by the government, what it needs to prove in order to satisfy the elements of the process. Well, how is that any different from a requirement, for example, in Bailey where the Supreme Court said that using a firearm requires the active employment of a firearm. The government has to come forward before a jury and make out its case, present its evidence. And either that defendant falls within or without that class of defendants who's guilty of that offense. How is that any different than what we have here? I think the difference is that Bailey was a case that changed the range of conduct that could be criminalized. And there's a key difference there because in this case, the conduct that's criminalized hasn't changed. Possessing a firearm is that conduct. And so in Bailey, it actually changed the evidence that was presented in that case, the question of whether this was something that could be considered use of the firearm. That conduct had actually been narrowed. It was no longer a crime. And that's a different situation than what you have here. We've narrowed the class of defendants in this case. We've now said that it's not the worst possible  more than one year in prison. Haven't we done the same thing here? Well, my argument, Your Honor, is that no, the class has not actually been narrowed. That, for example, if you compare this to the cases, for example, in the Armed Career Criminal Act, with the question of what is a violent felon. When you say, and as the Supreme Court says in the decision, a DUI is not a violent felon. Then you've created a class of people, a discernible class of people who are no longer, it's been narrowed so it no longer applies to them. But you can't look in this case and say who are the people whose offenses are no longer punishable by more or who are no longer being convicted of a crime punishable by more than one year in prison. When you look at that, you have to go back and look at the factual record. You have to decide, could the government if there was some sort of retrial, if they had known they had to put on this evidence, could they have proved it? There's no discernible classes in these other cases. And I think that's why this is a procedural ruling rather than a substantive one. If there's no further questions. Thank you very much, Mr. Deese. Ms. Ray. Thank you, Your Honor. Very quickly, Powell does not control and it is not necessary that this case take Powell or this case en banc to overrule Powell because Powell doesn't answer the question. So, Amika's suggestion that there's any need to take this case en banc in order to reach the substantive issue and hold that Simmons is retroactively applicable on collateral review, the government disagrees with that position. The Powell court specifically did not address this issue. And to the extent there may be language in there that some folks have construed as having done that, that is not binding, controlling language because that issue was not before the court. The fact finding, the response is simply right on line with Judge Deese with your question that in Bailey, any of those cases that narrowed the scope of a criminal statute, there would have to be questions of did the person actually commit the crime that we now understood and as we now understand it should be defined. And in this case, it's not simply possessing a firearm, there's one other element, which is the person has to have been convicted of a crime that's punishable by more than one year in prison and that's the element that was narrowed by this court's decision. In Simmons, it was a substantive narrowing and that decision should be held retroactively applicable on collateral review to all cases on collateral review and then we'll address cognizability as those issues arise. If your honors don't have further questions, thank you very much. We request the district court's decision be vacated. Thank you, Ms. Ray. Ms. Hester, you get the last word. Thank you, your honor. Interpreting Powell as amicus suggest puts Powell and would put the holding in this case directly at odds with Supreme Court precedent and that is not necessary because Powell did not decide the retroactivity of Simmons. As far as amicus argument that Simmons is a procedural rule, how can you say that there's no class of people outside of the statute when we can look at the state court judgment and determine that at least 100 people are innocent of 922G? That is a question that amicus has not been able to answer and that's because Simmons is a substantive decision that should apply retroactively. I would like to take a moment to comment on Judge King's inquiry about the Rule 48 motion. I just want to point out to the court that using Rule 48 would only put off the retroactivity decision because the government can only use that in cases... How much time do we like to put things off? Well, I can tell you that the cases that are going to bring this up are pending before the court right now and being held in abeyance. That's a good comeback. Because the government can only move to dismiss the 922G claims and that doesn't address the sentencing cases in which retroactivity also has been raised. So, deciding this on the Rule 48 issue will only put off for another day that's not too far down the road the question of whether Simmons is retroactive or not. Thank you. Thank you, Ms. Hester. We appreciate these arguments and particularly, Mr. Dietz, we want to thank you for your work as amicus. He was assigned to handle this case by the court because no one was taking up for the judge. And Mr. Dietz, you've done a fine job and we really appreciate it.
judges: Robert B. King, Albert Diaz, Henry F. Floyd